IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTONIO O. VALDEZ,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 1:25-cv-00024-RJS-DPB<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Defendant Wells Fargo Bank's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] Having reviewed the Motion and associated briefing, the court GRANTS Wells Fargo's Motion.[2]

## BACKGROUND

This case arises from events leading to the 2015 short sale of Plaintiff's former home located in Ogden, Utah (the Home).[3] The following facts are taken from Plaintiff's Complaint and are accepted as true for the purpose of resolving the present Motion.

In 2008, Plaintiff and his wife constructed the Home after obtaining financing through Wells Fargo,[4] and their monthly mortgage payment was $1,266.79.[5] In early 2012, Plaintiff

---

[1] Dkt. 11, *Motion to Dismiss Plaintiff's Complaint* (*Motion*).

[2] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and resolves the Motion based on the parties' written memoranda.

[3] Dkt. 2-2, *Complaint*.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 9.

1

missed a mortgage payment due to the declining health his father.[6] Plaintiff contacted Wells Fargo about the missed payment, and in response, the parties entered into a Temporary Forbearance Agreement (TFA) to get his loan back on track.[7] The TFA required Plaintiff to make six consecutive monthly payments in the amount of $642.78.[8] The payments were scheduled to be withdrawn automatically on the seventh day of each month, beginning July 7, 2012 and ending December 7, 2012.[9]

On December 10, 2012, Plaintiff learned a payment had been withdrawn pursuant to the TFA on December 7, 2012, but that it had been returned the following day.[10] He also learned two other TFA payments were subsequently withdrawn that month, but both payments were returned by Wells Fargo.[11]

Plaintiff contacted Wells Fargo to inquire about the withdrawals and returns, and a representative erroneously informed him no payments had been made in six months—under the TFA or otherwise.[12] Plaintiff thereafter reviewed his yearly statement and confirmed each of the five payments from July to November 2012 were withdrawn under the terms of the TFA on the seventh day of each month.[13] However, when Plaintiff contacted Wells Fargo again, another representative informed him there had been no payment in six months and that Plaintiff's loan

---

[6] *Id.* ¶¶ 10–11.
[7] *Id.* ¶¶ 12–13.
[8] *Id.* ¶ 12.
[9] *Id.* ¶¶ 14–15.
[10] *Id.* ¶ 17.
[11] *Id.*
[12] *Id.* ¶ 18.
[13] *Id.* ¶ 19.

was in default.[14] Plaintiff alleges he had $2,000 in his account at the time the sixth payment was to be withdrawn, more than enough to cover the payment.[15]

In January 2013, Wells Fargo initiated foreclosure, accelerated the loan, and refused to accept any monthly payments from Plaintiff.[16] Plaintiff submitted several applications for assistance to Wells Fargo, but these were denied.[17] Facing foreclosure, Plaintiff listed and sold the Home at a short sale in August 2015.[18]

Four years later, Plaintiff received a check in the mail for around $7,000 for an overpayment of automobile insurance to Wells Fargo.[19] After calling the number on the reimbursement check, an independent auditor overseeing Wells Fargo's repayment obligations recommended Plaintiff speak with an attorney about the events leading to the short sale of the Home.[20]

Before Plaintiff hired an attorney, on December 20, 2022, Wells Fargo entered into a Consent Order with the Consumer Financial Protection Bureau (CFPB) wherein the CFPB identified violations of law by Wells Fargo, which included, among other things, incorrectly denying mortgage loan modifications for thousands of mortgage borrowers.[21] The Consent Order required Wells Fargo to provide remediation to consumers for these practices,[22] but it did

---

[14] *Id.* ¶ 20.
[15] *Id.* ¶ 22.
[16] *Id.* ¶ 24.
[17] *Id.* ¶¶ 24–26.
[18] *Id.* ¶¶ 27–30.
[19] *Id.* ¶ 34.
[20] *Id.* ¶ 35.
[21] *Id.* ¶¶ 50–51.
[22] *Id.* ¶ 55.

not limit or otherwise prevent a person from taking individual action against Wells Fargo.[23] Plaintiff alleges that the publication of the December 2022 Consent Order was the first time Plaintiff obtained some evidence that Wells Fargo may have made misrepresentations to Plaintiff and fraudulently foreclosed on his home.[24]

Thereafter, Plaintiff retained counsel to investigate the events leading up to the short sale of the Home. After Plaintiff's attorney sent a demand letter in May 2024, Wells Fargo responded by denying any wrongdoing and providing copies of several letters, the TFA, and 10 days of bank transactions from November 2012.[25] In its response, Wells Fargo explained that:

> The sixth payment of $642.78 was due December 7, 2012. Our records indicate we attempted to withdraw a payment of $642.78 scheduled for November 19, 2012; however, our attempts were returned due to insufficient funds. The first attempt to withdraw these funds was returned on November 23, 2012. Our second attempt was returned on November 28, 2012, and our final attempt to withdraw this payment was returned on December 3, 2012. As a result, the plan was considered broken, and the forbearance plan was removed from the account.[26]

Wells Fargo also provided copies of other communications that seemed to suggest Wells Fargo did not acknowledge the existence of the TFA. For example, Wells Fargo provided Plaintiff with a letter from Wells Fargo dated November 20, 2012 that states:

> Our records indicate that your loan is in default for failure to make payments due. Unless the payments on your loan can be brought current by December 24, 2012, it will become necessary to require immediate payment in full (also called acceleration) of your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust, which include foreclosure.[27]

---

[23] *Id.* ¶ 56.

[24] *Id.* ¶ 50–58.

[25] *Id.* ¶ 39.

[26] *Id.* ¶¶ 40–41.

[27] *Id.* ¶ 43.

The letter did not mention the TFA or the five payments that were made previously,[28] and it clarified Plaintiff was required to pay $6,125.68 on or before December 24, 2012 to avoid the possibility of acceleration.[29] Another communication suggesting Wells Fargo did not recognize the TFA is dated January 3, 2013, where a Wells Fargo representative explained:

> Wells Fargo Home Mortgage (WFHM) received an inquiry regarding the above referenced mortgage loan. . . . Our records indicate that the payment made on November 19, 2012 in the amount of $642.78 was applied as the July 01, 2012 monthly mortgage payment. This payment was returned not honored by your financial institution and was reversed from the mortgage loan on December 3, 2012, causing your loan to be due for the July 01, 2012 payment. On December 3, 2012, a $20.00 return item fee was placed on your loan.[30]

Plaintiff brought the present lawsuit in January 2025, asserting claims for Breach of Contract, Wrongful Foreclosure, Fraud, Misrepresentation, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.[31] After removing this case to federal court, Wells Fargo filed the present Motion in March 2025 seeking to dismiss all Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).[32] The Motion is fully briefed and ripe for review.[33]

## LEGAL STANDARD

Federal pleading requirements govern actions commenced in or removed to federal court,[34] and generally, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must

---

[28] *Id.* ¶ 44.

[29] *Id.* ¶ 44–45.

[30] *Id.* ¶ 47.

[31] *See id.* ¶¶ 59–78.

[32] *Motion*.

[33] *Id.*; Dkt. 21, *Memorandum in Opposition to Defendant Wells Fargo's Motion to Dismiss Plaintiff's Complaint* (*Opposition*); Dkt. 24, *Defendant Wells Fargo Bank, N.A.'s Reply in Support of Motion to Dismiss* (*Reply*).

[34] *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896 (E.D. Mich. 2012) (citing *Herron v. Jupiter Transp. Co.,* 858 F.2d 332, 335–36 (6th Cir. 1988)).

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] In determining whether a complaint satisfies these criteria, courts accept all well-pleaded allegations as true, construe the allegations in the light most favorable to the plaintiff, and consider the complaint as a whole, along with the documents incorporated by reference into the complaint.[37] And "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations."[38] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[39] A defendant may also raise an affirmative defense by motion to dismiss for failure to state a claim.[40] Ultimately, the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.[41]

## ANALYSIS

Wells Fargo argues multiple independent grounds exist to dismiss Plaintiffs' claims, including the fact that Plaintiff asserted his claims outside the applicable statute of limitations.[42]

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[36] *Id.* (citing *Twombly*, 550 U.S. at 556).

[37] *See Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted).

[38] *Iqbal*, 556 U.S. at 679.

[39] *Id.* at 678.

[40] *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

[41] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[42] *Motion* at 2.

The court agrees that the face of the Complaint shows each of Plaintiff's claims is barred by the relevant statute of limitations under Utah law.[43] Accordingly, the Complaint must be dismissed.

A federal court sitting in diversity applies state law for statute of limitations purposes, including determining when an action is commenced.[44] Generally, under Utah law, civil actions must be commenced "within the periods prescribed in" Title 78B, Chapter 2 of the Utah Code, "after the cause of action has accrued[.]"[45] And normally, "a cause of action accrues upon the happening of the last event necessary to complete the cause of action."[46] Utah law requires a claim for breach of contract based on a written instrument be brought within six years.[47] Claims for fraud must be brought within three years.[48] Tort claims like negligent misrepresentation, emotional distress, and wrongful foreclosure[49] must be brought within four years.[50] Importantly, Plaintiff does not dispute his claims related to the 2015 sale of the Home would ordinarily be time-barred, but he insists two grounds exist to excuse his 10-year delay.

---

[43] *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *4 (D. Utah Oct. 24, 2024) ("A court may dismiss a claim under 12(b)(6) when the face of the complaint shows a claim is barred by an affirmative defense." (citations omitted)).

[44] *Burnham v. Humphrey Hosp. Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citations omitted).

[45] Utah Code § 78B-2-102.

[46] *Berenda v. Langford*, 914 P.2d 45, 50 (Utah 1996) (citation modified).

[47] Utah Code § 78B-2-309(1)(b).

[48] *Id.* § 78B-2-305(3).

[49] Contrary to Wells Fargo's arguments, a claim for wrongful foreclosure exists in Utah. *See McKay Dee Credit Union v. Fed. Home Loan Mortg. Corp.*, No. 20070399-CA, 2008 WL 1970944, at *1 n.2 (Utah Ct. App. 2008); *Bank of Am. v. Adamson*, 391 P.3d 196, 203 (Utah 2017) (citing *Gregorakos v. Wells Fargo Nat'l Ass'n*, 647 S.E.2d 289, 292 (2007) for the proposition that "a plaintiff asserting a claim of wrongful foreclosure must establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages"). Utah apparently draws upon Georgia law to justify the existence of this cause of action, and wrongful foreclosure is considered a tort in Georgia. *See Calhoun First Nat. Bank v. Dickens*, 443 S.E.2d 837, 838 (1994). To the extent this claim could be premised on the parties' written agreements, it would still be barred by Utah's six-year statute of limitations.

[50] *See* Utah Code § 78B-2-307; *Cabaness v. Thomas*, 232 P.3d 486, 496 (Utah 2010) (recognizing an emotional distress claim is subject to a four-year statute of limitations period); *Lilley v. JP Morgan Chase*, 317 P.3d 470, 474 (Utah Ct. App. 2013) (citations omitted) (recognizing the tort action of negligence is subject to a four-year statute of limitations period).

First, Plaintiff directs the court to the CFPB Consent Order where Wells Fargo committed itself to provide "remediation to consumers" for certain practices over a three-year period.[51] Plaintiff argues the existence of the Consent Order triggers Utah Code § 78B-2-113(b), which restarts the statute of limitations on "[a]n action for recovery of a debt" in the event "a written acknowledgment of the debt or a promise to pay is made by the debtor[.]" Plaintiff essentially argues Wells Fargo became a "debtor" when it made a promise to provide remediation under Consent Order.[52] The court is not convinced. To begin, the alleged misconduct in the Consent Order does not significantly relate to Plaintiff's asserted claims. Plaintiff's alleged harm stems from Wells Fargo's alleged breach of the TFA and subsequent acceleration of his loan.[53] But the Consent Order relates to other alleged violations of law by Wells Fargo, including (i) violations related to auto loan servicing, (ii) violations related to the denial of mortgage loan modifications to qualified borrowers; and (iii) violations involving consumer deposit accounts.[54] None of these violations form the basis of Plaintiff's asserted claims. Beyond that, the Consent Order does not discuss or address Plaintiff's specific mortgage loan in any way, and Wells Fargo neither admitted nor denied "any of the findings of fact or conclusions of law" in the Consent Order.[55] Thus, the Order is insufficient evidence of Wells Fargo making a "clear, distinct, direct, unqualified, and intentional" acknowledgment of an existing debt, as is required to trigger Utah Code § 78B-2-113.[56] Lastly, "debt" is generally defined as "an obligation to pay a fixed and

---

[51] *Opposition* at 19.

[52] *Id.* at 20.

[53] *Complaint* ¶¶ 59–78.

[54] *See* Dkt. 21-1, *Plaintiff's Exhibit 7* (*Consent Order*) at 1.

[55] *Id.* at 2.

[56] *Koyle v. Sand Canyon Corp.*, No. 2:15-CV-00239, 2016 WL 917927, at *4 (D. Utah Mar. 8, 2016), *aff'd*, 683 F. App'x 715 (10th Cir. 2017) (quoting *Wells Fargo Bank, N.A. v. Temple View Invs.*, 82 P.3d 655, 658 (Utah Ct. App. 2003)).

certain sum of money"[57]—an obligation which the Consent Order does not impose on Wells Fargo as to Plaintiff, and an obligation Plaintiff does not seek to recover under the terms of the Consent Order.[58] Utah courts have declined to extend the concept of "debt" in Utah Code § 78B-2-113 beyond this fixed definition to apply to obligations of every kind.[59] The court will not chart a new course here by applying § 78B-2-113 to Plaintiffs' claims unrelated to the recovery of an actual debt.[60]

Second, Plaintiff argues Utah's equitable discovery rule operates to toll the limitations period.[61] Under Utah law, there are two circumstances where an equitable discovery rule may operate to toll an otherwise fixed limitations period:

> (1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.[62]

However, in order to invoke the equitable discovery rule, "the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period."[63] Utah law is clear that "in every case, 'all that is required to trigger the statute of limitations is sufficient information to put

---

[57] *Olsen v. Fair Co.*, 369 P.3d 473, 478 (Utah Ct. App. 2016) (citing *Bown v. Loveland,* 678 P.2d 292, 296 (Utah 1984)).

[58] *See generally Consent Order*.

[59] *See Olsen*, 369 P.3d at 478.

[60] Under his asserted contract and tort claims, Plaintiff seeks $440,000 in compensatory damages based on the current fair market value of the Home. *Complaint* at 13. He also seeks damages for pain and suffering, punitive damages, attorneys' fees, costs, and non-economic damages. *Id.* at 13–14. He does not seek to recover a fixed amount of money owed under the terms of the Consent Order.

[61] *Opposition* at 20.

[62] *Helfrich v. Adams*, 299 P.3d 2, 6 (Utah Ct. App. 2013) (quoting *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005)).

[63] *Id.* (quoting *Berneau v. Martino,* 223 P.3d 1128, 1134–35 (Utah 2009)).

a plaintiff on notice to make further inquiry.'" And "[m]ere ignorance of the existence of a cause of action will neither prevent the running of the statute of limitations nor excuse a plaintiff's failure to file a claim within the relevant statutory period."[64]

  Here, Plaintiffs' allegations reveal he had sufficient information to make further inquiry regarding the alleged breach of the TFA and fraudulent acceleration of his loan by, at the latest, August 2015. Accepting Plaintiff's allegations as true, Plaintiff was aware of the terms of the TFA, and he understood there was an issue with his payments under the TFA "immediately" upon his return from California in December 2012.[65] Shortly thereafter, Plaintiff alleges he was "astonished" and "alarmed" by the information provided to him by Wells Fargo representatives about the default status of his loan.[66] And upon closer review of his statements, Plaintiff admits he learned payments had actually been withdrawn as provided under the TFA.[67] Still, after the loan was accelerated in January 2013, Plaintiff proceeded to list and sell the Home in August 2015 to satisfy his loan obligations despite knowing he had sufficient funds to make his sixth and final TFA payment and regular monthly mortgage payments thereafter.[68] These facts form the basis of Plaintiff's asserted claims, and Plaintiff was sufficiently on notice to make further inquiry for over a decade, even despite the conflicting conversations with Wells Fargo representatives. Moreover, all of Plaintiff's cited evidence obtained in 2024—with the exception of the Consent Order—was discoverable in 2013.[69] The fact that Plaintiff did not request this evidence until 2024 does not alter the analysis. While the court is sympathetic to Plaintiff's

---

[64] *Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005) (citation omitted).

[65] *Complaint* ¶ 18.

[66] *Id.* ¶¶ 18–19.

[67] *Id.* ¶ 19.

[68] *Id.* ¶¶ 28–30.

[69] *Id.* ¶¶ 39–57.

position, the court cannot legally excuse a 10-year delay in light of controlling Utah law.  As Plaintiff presents no compelling argument regarding why he could not have brought his claims within the limitations period, and because this case does not present exceptional circumstances justifying departure from the applicable rule, each of Plaintiff's claims are barred as untimely under the applicable Utah statute of limitations.

## CONCLUSION

For the foregoing reasons, Wells Fargo's Motion is GRANTED,[70] and Plaintiff's Complaint is DISMISSED.  The Clerk of Court is directed to close the case.

SO ORDERED this 14th day of August 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[70] Dkt. 11.